UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELLEN KATHLEEN H.,[1]

                              Plaintiff,                    **DECISION AND ORDER**

v.                                                          1:22-cv-00210 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


              This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to disability

insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the

pleadings [7, 12].[2] The parties have consented to my jurisdiction [14]. Having reviewed the

parties' submissions [7, 12, 13], the Commissioner's motion is granted, and plaintiff's motion is

denied.

## BACKGROUND

              The parties' familiarity with the 961-page administrative record [6] is presumed.

Further, the parties have comprehensively set forth in their papers the plaintiff's treatment history

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]        Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering. All other page references are to the CM/ECF pagination.

and the relevant medical evidence.  Accordingly, I refer below only to those facts necessary to explain my decision.

In October 2016, plaintiff filed an application for DIB, alleging a disability beginning on April 23, 2015 due to anxiety, bipolar disorder, migraines, panic attacks, insomnia, and depression.  Administrative Record [6] at 205, 249, 490.  This matter was previously remanded from this court.  Id. at 604-616 (Decision and Order [19], case no. 1:19-cv-806 (EAW)).  The court noted in its decision that, "[a]side from the opinion offered by [the state agency psychologist L. Blackwell, Ph.D.], who did not examine Plaintiff, [treating psychiatrist M. Sadiqur Rahman M.D.'s] assessments are the only opinions in the record addressing Plaintiff's mental functional limitations".  Id.  Because the treating physician's May 2018 assessment had not been in the record when Dr. Blackwell rendered his December 2016 opinion, the court found that "Dr. Blackwell's opinion may not fill the gap in the record created by the ALJ's rejection of Dr. Rahman's opinions".  Id. at 615.  Upon remand, the court ordered that "the ALJ should discuss the entirety of Dr. Rahman's opinions relating to Plaintiff's mental functioning.  Should the ALJ determine that Dr. Rahman's opinions are not entitled to controlling weight, he must obtain additional opinion evidence from which he can reliably and adequately assess Plaintiff's mental functional limitations".  Id. at 615-16.

ALJ Stephan Bell held a hearing on November 3, 2021, at which plaintiff, who appeared with an attorney, and a vocational expert testified.  See id. at 517-43 (transcript of hearing).  The vocational expert, Amy Vercillo, testified that an individual with plaintiff's RFC could perform the medium work, unskilled job of hand packer, and the light work, unskilled jobs of labeler, and small product assembler.  Id. at 537-38.

The plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2018". Id. at 493.  Based upon the medical evidence and testimony, ALJ Bell found that, through the date last insured, plaintiff's severe impairments were "depressive disorder not otherwise specified, cocaine dependence, alcohol dependence, bipolar disorder, anxiety disorder not otherwise specified and migraines". Id.  He considered the four broad categories of "Paragraph B" mental functioning and determined that plaintiff had no limitations in the category of understanding, remembering, or applying information; moderate limitations in the functional categories of interacting with others, and concentrating, persisting, and maintaining pace; and mild limitations in the category of adapting and managing oneself. Id. at 494-95.

In order to determine plaintiff's RFC, ALJ Bell considered functional assessments from several sources: consultative examiner Janine Ippolito, Psy.D.; consultative neurologist David Brauer, M.D.; Dr. Rahman; and Dr. Blackwell. See id. at 504-506.

A.      **The RFC and ALJ Bell's Supporting Analysis**

To determine the plaintiff's RFC, ALJ Bell considered plaintiff's testimony (id. at 497-98), medical evidence and treatment records concerning plaintiff's headaches (id. at 498-500) and mental health conditions (id. at 500-503); and the opinion evidence (id. at 504-506).  Based upon the record as a whole, ALJ Bell concluded that plaintiff had the RFC to perform "a full range of work at all exertional levels" with the following additional limitations:

> "The claimant can never climb ladders, ropes, or scaffolds, she can never work at unprotected heights or around moving mechanical parts and can never operate a motor vehicle as a job duty; the claimant can work in moderate noise; the claimant is able to perform simple routine tasks and make simple work-related decisions; and the claimant is able to occasionally interact with

supervisors and coworkers but she can never interact with the
public."

Id. at 496.

ALJ Bell reviewed all the medical evidence in the file, however, he found that the
medical evidence of treatment within the claimed period of disability was of particular
importance:

> "[D]ue to the claimant filing only a Title II application for a period
> of disability and disability insurance benefits, the claimant must
> establish disability on or before that date in order to be entitled to
> benefits.  As a result, the evidence the claimant submitted
> concerning the period after her date last insured, while considered
> and discussed herein, is not significantly relevant to a finding of
> disability, as the objective evidence and findings do not refer to the
> claimant's condition prior to or on her date last insured."

Id. at 498.

ALJ Bell began his analysis by noting that plaintiff reported to her providers
significant levels of activity that appear to contradict her "allegation of disabling physical and
mental symptoms and limitations".  For example, plaintiff's treatment records indicate that she
attends her appointments and Alcoholics Anonymous ("AA") meetings without assistance,
attends to her personal hygiene, "cares for dogs and walks them along a trail, goes camping in
state parks and enjoys the outdoors", "socializes, attends concerts, as well as sporting events",
"organizes hikes" with friends from AA, "watches television, listens to the radio and shops in
stores".  Id. at 498.  ALJ Bell found that these activities "require a measure of physical and mental
demands, which are not consistent with the level of limitation" alleged by plaintiff, and "suggest a
greater degree of functional capability than claimed".  Id.  ALJ Bell then outlined and analyzed in
detail the medical evidence from 2014 through 2020 concerning plaintiff's headaches and mental
health conditions.  Id. at 499-500.   Finally, he considered the opinions in the record from Drs.

Blackwell, Brauer, Rahman, and Ippolito. *See* id. at 504-506.

> ### 1.    Dr. Blackwell

Dr. Blackwell considered the evidence in the record as of the date of his assessment on December 7, 2016, including Dr. Rahman's November 9, 2016 assessment and treatment notes from both Dr. Rahman and plaintiff's counselor, William M. Bermingham, LCSW-R. Id. at 112-14, 116. Based upon these records, Dr. Blackwell opined that plaintiff "would be able to perform simple tasks". Id. at 116.

ALJ Bell assigned "partial weight" to Dr. Blackwell's opinion because "it does not adequately consider the claimant's social anxiety issues", but assigned "great weight" "to the portion of the opinion limiting the claimant to simple, routing and repetitive tasks". Id. at 504. He found that Dr. Blackwell's opinions were "generally consistent with the medical evidence of record", including Dr. Rahman's treatment notes, "which reflect grossly normal mental status findings". Id.

> ### 2.    Dr. Brauer

Dr. Brauer performed a neurological examination of the plaintiff on November 30, 2016. Id. at 400. Her chief complaint was "migraine headaches". She claimed to have a headache "almost every day". Id. Dr. Brauer found "[n]o indication of recent or remote memory impairment", her "[m]ood and affect [were] appropriate", and there was [n]o suggestion of impairment in insight or judgment". Id. at 401. Because there were no deficits or negative findings noted upon examination (id. at 401-402), Dr. Brauer found that plaintiff had no functional limitations. Id. at 402.

ALJ Bell accorded partial weight to Dr. Bauer's opinion.  He agreed that plaintiff's headaches did not impose exertional limitations, but opined, based on the evidence in the record, that environmental restrictions were warranted.  Id. at 504.

### 3.    Dr. Rahman

Dr. Rahman completed mental health questionnaires concerning plaintiff's functional limitations on November 9, 2016, May 9, 2018, and September 14, 2021.  Id. at 391-93, 467-71, 957-61.  In the November 9, 2016 questionnaire, Dr. Rahman noted that plaintiff's behavior was "withdrawn" and that her mood was "depressed" and "anxious".  Id. at 391. However, her attention and concentration were "fair during the evaluation" but was otherwise "limited for sustain[ed] concentration for gainful work".  Id.  Her memory,  ability to  recall information and perform calculations, and  insight and judgment were "fair".  Id. 391-92.  Dr. Rahman checked boxes indicating that plaintiff's ability to do work-related mental activities was "limited" in each domain.  Id. at 392-93.  He also asserted that plaintiff was "not able to maintain her job" due to her mood, depression, and anxiety symptoms.  Id. at 393.

In his May 9, 2018 Mental Impairment Questionnaire, Dr. Rahman indicated that plaintiff had a "marked" limitation in her ability to "understand, remember or apply information", and "extreme" limitations in her ability to "interact with others", "concentrate, persist or maintain pace" and "adapt or manage oneself".  Id. at 469.  In addition, he indicated that plaintiff had "extreme" limitations in eleven of the sixteen listed abilities needed to perform unskilled work. Id. at 470.  He checked the box indicating plaintiff had a "marked" limitation in the ability to "understand and remember very short and simple instructions" and "moderate" limitations in her ability to perform four other activities necessary for unskilled work.  Id.

In his September 14, 2021 Mental Residual Functional Capacity Questionnaire, Dr.

Rahman again rated the severity of plaintiff's limitation for the same sixteen abilities needed to perform unskilled work.  He indicated that plaintiff was "unable to meet competitive standards" in two, and "seriously limited" in eight functional categories.  Id.  He nonetheless indicated that plaintiff had a "limited but satisfactory" ability to "understand and remember very short and simple instructions" and "maintain attention for two hour segment[s]".  Id.

ALJ Bell assigned Dr. Rahman's 2016 and 2018 opinions "partial weight rather than controlling weight".  He noted that, "despite his treating relationship with the claimant, his limitations are not consistent with the claimant's self-reported activities of daily living over the many years of which this case spans, nor are they supported by Dr. Rahman's own treatment notes or the examination findings of other providers that revealed mostly normal mental status examinations".  Id. at 505.  He also identified "internally inconsistent" findings within Dr. Rahman's opinions.  With respect to the September 2021 opinion, ALJ Bell found it was "not persuasive and is based on her subjective report, and belied by her benign mental examinations, the fact she attends all of her appointments, appears to be groomed, and her own stated activities".  Id.

### 4.     Dr. Ippolito

Dr. Ippolito conducted a post-remand psychiatric evaluation of plaintiff on June 4, 2021, including a mental status examination.  Id. at 924-931.  She also considered plaintiff's functional abilities, opining that plaintiff had, *inter alia*, marked limitation regulating emotions, controlling behavior, and maintaining her well-being.  Id. at 926-27.

ALJ Bell assigned Dr. Ippolito's opinion "partial weight" because "the totality of the evidence as discussed herein does not support marked limitations in her abilities to regulate

emotions, control behavior, and maintain well-being during the period at issue, given the

claimant's benign mental status findings, attendance at all of her appointments and reported

activities".


### B.    The Parties' Arguments

Plaintiff argues that the ALJ erred in rejecting the marked limitations in Dr.

Ippolito's opinion: "[i]n rejecting the marked limitations from Dr. Ippolito's opinion, the ALJ

reasoned that 'the totality of the evidence as discussed herein does not support marked limitations

in [plaintiff's] abilities to regulate emotions, control behavior, and maintain well-being during the

period at issue.' . . . The ALJ's vague and conclusory reasoning for selectively rejecting the more

restrictive portions of Dr. Ippolito's opinion 'smacks of cherry picking.'" Plaintiff's

Memorandum of Law [7-1] at 19, *citing* Administrative Record [6] at 506; and Young v. Colvin,

2015 WL 1524417, *8 (N.D.N.Y. 2015).

For example, plaintiff notes that this court's Decision and Order remanding this

case specifically found that "at times Plaintiff reported some improvement in her mood and had

intact memory and concentration, other examinations reveal that she experienced continuing

anxiety". Id. at 19, *citing* Administrative Record [6] at 613-14.  She argues that the "ALJ's

failure to address the more significant findings in Plaintiff's treatment records that support Dr.

Ippolito's opinion and instead focus on the 'benign mental examination' suggests broad cherry

picking and prevents meaningful judicial review". Id. at 19.  In addition, she argues that the ALJ

failed to consider "the consistency of Dr. Ippolito's opinion that Plaintiff had marked limitations

in regulating emotions, controlling behavior, and maintaining well-being with Dr. Rahman's

opinions, and Plaintiff's treatment records as a whole". Id. at 20.  She contends that remand is

required "for proper consideration of the evidence", including the consistency of Dr. Ippolito's opinion of marked limitations with Dr. Rahman's opinion, "and Plaintiff's treatment record as a whole".  Id.

Secondly, plaintiff argues that the ALJ improperly found that plaintiff underwent "conservative treatment" for her migraines and had "normal findings".  Id. at 21.  She argues that the "record is replete with evidence demonstrating that her chronic migraine headaches warranted greater limitations [than] the ALJ included in the RFC determination".  Id.  Instead, the ALJ should have included an "accommodation for off task time, breaks, or absences" to "account for the fatigue, nausea and vomiting that Plaintiff associated with her headaches, which she often suffered from several times per week" and "provided no explanation for why these limitations were not warranted".  Id.  Plaintiff argues that remand is necessary "for proper reconsideration of her migraine headaches".  Id.

In response, the Commissioner argues that ALJ Bell properly analyzed the evidence of record, and that his determination was supported by substantial evidence.  Commissioner's Brief [12-1] at 7-18.  More specifically, the Commissioner argues that the ALJ accurately characterized and cited the medical evidence, including treatment notes (id. at 8-12), and satisfied his obligation to consider the consistency of Dr. Ippolito's opinion with the evidence in the record, as required by the regulations (id. at 12-13). In addition, with respect to plaintiff's migraines, the Commissioner argues that ALJ Bell included in the RFC the limitations reasonably suggested by the treatment records during the relevant period, including evidence of plaintiff's activities.  Id. at 13-17.

For the following reasons, I agree with the Commissioner.

## DISCUSSION

**A.     Standard of Review**

   "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938.  ).   "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record".  Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

   An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

   The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical

opinions verbatim in order to render a sufficiently-supported RFC determination").  It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 Fed. Appx. 25, 28 (2d Cir. 2016) (Summary Order) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.     The RFC is Supported by Substantial Evidence**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. at 56.  In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." Riccobono v. Saul, 796 Fed. Appx. 49, 50 (2d Cir. 2020) (Summary Order).

Although ALJ Bell's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  He neither mischaracterized nor cherry-picked the record to support his conclusions. Therefore, I find that his conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Bell's reasoning  "as adequate to

support his conclusion". <u>Consolidated Edison Co.</u>, 305 U.S. at 229. The substantial evidence

standard means that, "once an ALJ finds facts, we can reject those facts only if a reasonable

factfinder would *have to conclude otherwise*". <u>Schillo v. Kijakazi</u>, 31 F.4th 64, 74 (2d Cir. 2022)

(emphasis in original), *citing* <u>Brault</u>, <u>supra</u>.


### 1.   The ALJ Did Not Cherry-Pick the Record

ALJ Bell weighed Dr. Ippolito's opinions with specific references to the record,

including plaintiff's treatment notes. He did not cherry-pick the record, nor did he fail to consider

whether Dr. Ippolito's opinion was consistent with other evidence in the record.

Plaintiff argues that ALJ Bell improperly rejected the marked limitations in Dr.

Ippolito's report and failed to explicitly discuss whether the marked limitations were consistent

with the limitations in Dr. Rahman's opinions. Plaintiff's Memorandum of Law [7-1] at 18. ALJ

Bell's decision, however, provides sufficient analysis to satisfy his obligation "to construct an

accurate and logical bridge between his recitation of the facts and the conclusions he reached".

<u>Lopez obo Y.T.</u>, 2020 WL 4504987 at *2 (internal quotation omitted). Moreover, based upon

ALJ Bell's analysis and my review of the evidence in the record, I cannot say that "a reasonable

factfinder would *have to conclude otherwise*". <u>Schillo</u>, <u>supa</u>.

Dr. Ippolito opined that plaintiff "can regulate emotions, control behavior, and

maintain well-being with marked limitations". Administrative Record [6] at 927. The ability to

regulate emotions, control behavior, and maintain well-being are the fourth functional area

described in paragraph B of the regulations under the heading "Adapt or Manage oneself

(paragraph B4)". 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A.2.b. Examples of functional

abilities covered by this domain include:

> "Responding to demands; adapting to changes; managing your
> psychologically based symptoms; distinguishing between
> acceptable and unacceptable work performance; setting realistic
> goals; making plans for yourself independently of others;
> maintaining personal hygiene and attire appropriate to a work
> setting; and being aware of normal hazards and taking appropriate
> precautions."

Id.  Dr. Ippolito found that plaintiff had a marked limitation in this domain generally, but also

specifically stated that, of these, plaintiff had "no evidence of limitations" in her ability to

"maintain personal hygiene and appropriate attire and demonstrate awareness of normal hazards

and take appropriate precautions".  Administrative Record [6] at 927.  Dr. Ippolito noted in her

report that plaintiff was dressed casually at their visit and that her hygiene and grooming appeared

satisfactory.  Id. at 925.  Though plaintiff "reported feeling somewhat depressed", she was

nonetheless "cooperative" with the examination.  Id. at 925-26.   At step 3 of his analysis, ALJ

Bell found that plaintiff had a "mild limitations" in this functional area.  He explained that

plaintiff "reported difficulty with handling stress and changes in routine, [and] motivation for

self-care . . . [n]evertheless the claimant is consistently noted to be well groomed, she also

exhibits good judgment and insight".  Id. at 495.  To support this statement, he cited treatment

notes from both Dr. Rahman and plaintiff's treating primary care physician from June 2017

through May 2020 that noted both adequate grooming and good insight and judgment.  Id. at 495

(*citing* id. at 418 (6/27/2017), 427 (8/18/2017), 434 (10/27/2017), 437 (8/24/2017), 441

(12/19/2017), 447 (3/27/2018), 458 (4/19/2018), 461 (2/20/2018), 479 (6/22/2018), 483

(5/9/2018), 830 (2/11/2020), 838 (10/17/2018), 854 (4/25/2019), 863 (11/19/2019), 868

(5/19/2020), 887 (8/22/2018), 889 (10/29/2018), 891 (12/10/2019), 893 (10/3/2019), 895

(8/1/2019), 897 (5/3/2019), and 899 (1/17/2019)).  In his analysis of Dr. Ippolito's opinion, ALJ

Bell did not repeat the citations listed in his step 3 analysis, but repeated his assessment that "the

totality of the evidence as discussed herein does not support marked limitations in her abilities to regulate emotions, control behavior, and maintain well-being during the period at issue, given the claimant's benign mental status findings, attendance at all of her appointments and reported activities". <u>Id.</u> at 506.

Read together with his step 3 analysis (<u>id.</u> at 495) and his in depth discussion of the contents of the treatment notes from plaintiff's psychiatric providers (<u>id.</u> at 500-503), ALJ Bell's reasoning is apparent, rather than "vague and conclusory".  Plaintiff's Memorandum of Law [7-1] at 19.  ALJ Bell explicitly considered the treatment notes identified in the District Court opinion that demonstrated "continuing anxiety".  *Compare* <u>id.</u> at 613 (District Court opinion citing 11/7/2016, 4/19/ 2018, and 6/22//2018 treatment notes) *to* <u>id.</u> at 495 and 501 (ALJ Bell *citing* treatment notes, <u>id.</u> at 415 (11/7/2016), 458 (4/19/2018) and 479 (6/22/2018)).

In addition, ALJ Bell considered other treatment notes with similar notations concerning plaintiff's mood, and contrasted those reports with other information in the same treatment notes.  S*ee e.g.* <u>id.</u> at 501-502 ("in March and again in April 2017, the claimant continued to report anxious and depressed mood but reported significant benefit from current medications without side effects, and her mental status examination remained benign and unchanged -- she was cooperative and with fair eye contact[,] she described her mood as anxious and depressed, her affect was mood congruent, speech was coherent, thought processes were goal directed"); and <u>id.</u> at 502 ("[a] follow up note from December 2019 finds the claimant reporting that she still has anxious mood, despite admitted benefit from current medications . . . [h]er mental status examination remained unremarkable aside from mood and affect".)

ALJ Bell considered Dr. Rahman's treatment notes alongside evidence of plaintiff's functioning found in her counseling notes.  These notes reveal that plaintiff reported

"going out for a fish fry with her son to celebrate" the "seventh anniversary of her sobriety",

"hiking with a friend", "getting outdoors as a manner of managing her stress", involvement on "a

dating website", "going out for birthday celebrations with friends from AA, going out on dates,

and planning on attending birding presentation at Letchworth Park", "going on dates, including

going to a concert recently", attending "her 25th high school reunion", "dating someone new",

"going out for walk in nature for reflection and coping", "cross country skiing", "walking outside

to manage her moods", and "attend[ing] a Harlem Globetrotters game with her boyfriend and her

son and his girlfriend".  Id. at 503.  Further, ALJ Bell also notes that the treatment records reflect

that plaintiff "makes and attends her appointments consistently" and that she "copes with stressors

in a productive way", in addition to attending public events and organizing outings with friends.

Id.

ALJ Bell does not re-state these findings and citations in his analysis of either Dr.

Ippolito's or Dr. Rahman's opinions.  However, given these findings and analysis, his reasoning

for assigning only "partial weight" to Dr. Ippolito's opinion of a marked limitation in regulating

emotions, controlling behavior, and maintaining well-being is clear when he states that "the

totality of the evidence as discussed herein does not support marked limitations in her abilities to

regulate emotions, control behavior, and maintain well-being during the period at issue, given the

claimant's benign mental status findings, attendance at all of her appointments and reported

activities".  Id. at 506 (emphasis added).  For the same reasons, ALJ Bell's reasons for finding the

extreme limitations in Dr. Rahman's 2016, 2018, and 2021 opinions unpersuasive were clear and

adequately stated:

> "Indeed, his own progress notes from 2015 through 2018
> consistently demonstrate the claimant has had considerable
> improvement in her condition with treatment, including good social

functioning, intact memory and concentration, and overall stability
with minimal treatment of outpatient therapy and medication.  As
such, I find Dr. Rahman's statements to not be credible, both in
comparison to his own treatment notes and contrasted with the
medical record at large.  His opinions are therefore provided lesser
weight, as I find his report of the claimant's limitations to be
unpersuasive as it is way out of proportion to benign mental
examinations, the fact she attends all of her appointments, appears
to be groomed, and her own stated activities.

* * *

As with Dr. Rahman's prior opinions, his assessment regarding
claimant's functioning is not persuasive and is based on her
subjective report, and belied by her benign mental examinations, the
fact she attends all of her appointments, appears to be groomed, and
her own stated activities."

Id. at 505-506.

ALJ Bell satisfied his obligation "to construct an accurate and logical bridge

between his recitation of the facts and the conclusions he reached" and his conclusions are

supported by substantial evidence.  Lopez obo Y.T., 2020 WL 4504987 at *2.  Although there is

evidence in the record that could support different findings, "there is substantial evidence to

support the ALJ's decision.  The Commissioner, not the Court, is responsible for weighing

conflicting evidence."  Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y.

2006).  Based on this record, I cannot say that "a reasonable factfinder would *have to conclude*

*otherwise*".  Schillo, supa.

Finally, I do not agree with the plaintiff that ALJ Bell was required to explicitly

discuss whether Dr. Ippolito's opinion concerning marked limitations was consistent with Dr.

Rahman's opinions.  Plaintiff's Memorandum of Law [7-1] at 18-20.  As discussed above, ALJ

Bell's findings are supported by substantial evidence in the record.  Further, there is no

requirement that an ALJ explicitly compare the opinions to one another.  The pertinent regulation

-16-

states, "[g]enerally, the more consistent a medical opinion is *with the record as a whole*, the more weight we will give to that medical opinion." 20 C.F.R. § 416.927(c)(4) (emphasis added). The ALJ demonstrated that he considered each opinion in the context of the other evidence in the record, including treatment notes, hearing testimony, and other filings, and determined that the marked (or greater) limitations stated in both Dr. Ippolito's and Dr. Rahman's opinions were inconsistent with that other evidence.

I find no error in ALJ Bell's reasoning, and his determination is therefore supported by substantial evidence.

### 2. The ALJ Did Not Err in His Consideration of Plaintiff's Migraine Headaches

Plaintiff's final argument is that ALJ Bell improperly considered the evidence concerning her migraine headaches and failed to incorporate into the RFC "an accommodation for off task time, breaks, or absences and provided no explanation for why these limitations were not warranted". Plaintiff's Memorandum of Law [7-1] at 21. More specifically, she faults the ALJ for relying upon plaintiff's "conservative treatment" and "normal findings" to support his conclusion that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence, and that no additional limitations in the RFC to account for [p]laintiff's migraines were warranted". Id. Plaintiff does not cite any record evidence that suggests she requires any of these limitations due to her headaches. I do not agree that ALJ Bell's failure to include these limitations in the RFC was an error.

As pointed out by the Commissioner, only Dr. Brauer opined concerning plaintiff's functional limitations due to her headaches. Commissioner's Brief [12-1] at 15. After his examination, Dr. Brauer concluded that plaintiff had no limitations due to her migraine

headaches.  Administrative Record [6] at 402.   ALJ Bell accorded partial weight to Dr. Bauer's opinion:

> "[W]hile I concur with the findings of Dr. Bauer in that the claimant's physical impairments do not impose any exertional limitations, the evidence nonetheless substantiates the need for some environmental restrictions limiting the claimant from hazards such as climbing or unprotected heights based upon her migraine headaches, as her complaints of sound sensitivity.  Accordingly, because his opinion does not address these issues, I must provide his conclusions only partial weight."

Id. at 504.

I find no error in ALJ Bell's characterization of plaintiff's treatment for her migraine headaches as "conservative" or his description of the findings in her treatment records as "normal".  ALJ Bell outlined plaintiff's treatment notes related to plaintiff's migraine headaches at some length in his decision.  Id. at 499-500.  He noted gaps in the plaintiff's treatment records from December 2014 through February 2016, and from March 2018[3] through March 2019, which include portions of the relevant period.  Id. at 499-500.  He noted that plaintiff's records demonstrate "the claimant's migraine activity remained largely stable in 2016, with neurology examinations showing her to be neurologically intact".  Id. at 500, citing Dr. Brauer's report (id. at 400-404).  He also notes that "progress notes from 2018 additionally support that her migraines have remained stable when on medication, with no or limited follow up".  Id.  He noted that at a visit in February 2016, she reported that she had discontinued taking prescription medication for her headaches approximately one year prior, and was using Tylenol for her headaches.  Id. at 500.

---

[3]     ALJ Bell references "[p]rogress notes from 2018" and cites Exhibit B14F (id. at 422-30), which contains a treatment note dated August 18, 2017.  Id. at 500.  It states that plaintiff's "current medical regimen is effective" and that she is to "continue [the] present plan and medications".  Id. at 429.  A March 27, 2018 treatment note does, however, document that plaintiff's migraines are continuing while on her medication.  She complained that one medication was "no longer effective" and requested a change to her prescribed medication.  Id. at 446. Although I cannot determine to which of the treatment notes ALJ Bell intended to refer, I find that he content of neither note appears to alter ALJ Bell's analysis.

-18-

ALJ Bell concluded, based on this evidence, that plaintiff "has not sought or received significant treatment nor pursued more aggressive treatment modalities for her alleged physical limitations, calling into question the severity of her condition".  Id.  This evidence, coupled with plaintiff's reports that she "engaged in a fairly active social life, with frequent outdoor excursions, which is not entirely consistent with an individual frequently bothered by uncontrollable migraines" supported his conclusion that "no additional limitations are warranted".  Id.

Plaintiff argues that the limitations incorporated into the RFC "fail to account for the fatigue, nausea and vomiting that [p]laintiff associated with her headaches, which she often suffered from several times per week".  Plaintiff's Memorandum of Law [7-1] at 21. Plaintiff reported "occasional nausea and vomiting" to Dr. Brauer, who did not include any functional limitation in his report to account for this "occasional" symptom.  Administrative Record [6] at 400, 402, 499.   "[I]t is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).  She has not identified any evidence to support her claim that she requires off task time, breaks, or absences.

Moreover, plaintiff failed to identify any case law suggesting that the ALJ erred in his analysis as a matter of law.  She cites Drake v. Saul, 839 Fed. Appx. 584, 588 (2d Cir. 2020) (Summary Order), but that case is distinguishable.  There, the ALJ made a negative credibility determination about the plaintiff's testimony concerning the "intensity and frequency of his headaches", noting that "all of the information in the evidence is subjective, especially since no medical provider observed the claimant with any signs of a headache in an office setting that they believed".  Id. at 588.  The court found that "[t]o the extent the ALJ drew any negative inference as to Drake's credibility from this statement, such inference would be erroneous, because headaches are subjective symptoms not subject to objective testing".  Id.   Here, ALJ Bell made

-19-

no such pronouncements.  He based his conclusions concerning the plaintiff's allegations of

disability due to her migraines on the treatment notes, the plaintiff's own lack of persistence in

pursuing recommended treatment, and her participation in activities that appeared to contradict

her claims that her headaches were debilitating.

Plaintiff also cites <u>Shaw</u>, 221 F.3d at 134     for the proposition that "the district

court erred in ruling that the treating physician's conservative treatment recommendations

constituted substantial evidence that the claimant was not disabled".  There, however, plaintiff's

treating physician opined that plaintiff was totally disabled.  <u>Id.</u> at 130.  The court found:

> "[T]he district court improperly characterized the fact that Dr.
> Cassvan recommended only conservative physical therapy, hot
> packs, EMG testing - not surgery or prescriptions drugs - as
> substantial evidence that plaintiff was not physically disabled
> during the relevant period. . . . This is not the overwhelmingly
> compelling type of critique that would permit the Commissioner to
> overcome an otherwise valid medical opinion."

<u>Id.</u> at 134-35.  Here, however, ALJ Bell did not rely upon "conservative treatment" as a reason to

discount a medical opinion.  He found that the conservative treatment plaintiff received,

plaintiff's lack of diligence in pursuing treatment for her migraines, all considered along with her

level of activity, were a reason to discount her claims of disability where there was no opinion

evidence in the record from any physician that plaintiff's migraines were debilitating.  Under

these circumstances, there is no error, and the ALJ's determination is supported by substantial

evidence.  *See* <u>Netter v. Astrue</u>, 272 Fed. Appx. 54, 56 (2d Cir. 2008) (Summary Order) ("because

the district court relied on Dr. Regalla's conservative treatment regimen merely as additional

evidence supporting the ALJ's determination rather than as 'compelling' evidence sufficient in

itself to overcome an 'otherwise valid medical opinion,' the district court did not impermissibly

'substitute his own expertise or view of the medical proof for the treating physician's opinion'")
(*citing* <u>Shaw</u>, <u>supra</u>).

I find no error in ALJ Bell's reasoning, and his determination is therefore supported by substantial evidence.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [12] is granted, and plaintiff's motion [7] is denied.

 **SO ORDERED**.

Dated: May 23, 2024

/s/  Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge